IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SIGNAL HILL AREA ALLIANCE,<br><br>Plaintiff,<br>v.<br><br>EASY MIX CONCRETE SERVICES, LLC,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 21-352 |

**Plaintiff Signal Hill Area Alliance's Original Complaint**

## I. Introduction

1. Signal Hill Area Alliance ("SHAA") brings this citizen suit against Easy Mix Concrete Services, LLC ("Easy Mix"), under the Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq., also known as the Clean Water Act ("CWA" or "Act"). SHAA asks this Court to enter declaratory and injunctive relief, civil penalties, and other relief to correct Easy Mix's recurring, unauthorized discharges of polluted stormwater into area waterways.

2. In an effort to redress this long-standing, ongoing problem in the Signal Hill region, SHAA brings this citizen suit against Easy Mix under the CWA. *See* 33 U.S.C. § 1365(a)(1).

## II. Jurisdiction & Venue

3. This Court has subject matter jurisdiction over this action under 28 U.S.C § 1331 (federal question) and 33 U.S.C. § 1365(a) (CWA citizen suit to enforce effluent standards or limitations). The relief requested is authorized by 28 U.S.C. §§ 2201 and 2202 (further necessary or proper relief based on a declaratory judgment), 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

4. Venue is proper under 28 U.S.C. § 1391(b)(1), (2) and 33 U.S.C. § 1365(c), because Easy Mix, its concrete facility, and its unauthorized discharges all are located or occurred in the

Austin Division of the Western District of Texas.

## III. Notice

5. SHAA has complied with the CWA's statutory notice requirements. See 33 U.S.C. § 1365(b)(1)(A). On January 22, 2021, in a letter sent by certified mail to Bill Heath, registered agent for Easy Mix, SHAA gave Easy Mix notice of the violations identified in this complaint and of its intent to file suit after 60 days should those violations continue. A true and correct copy of the notice letter, with documentation of its postmark and receipt, is attached as **Exhibit 1**.

6. SHAA also mailed a copy of its notice letter by certified mail to the Administrator of the EPA, the Regional Administrator for EPA Region 6, the State of Texas through the Texas Attorney General, and the Executive Director of Texas Commission on Environmental Quality ("TCEQ").

7. Sixty days have passed since SHAA served Easy Mix and federal and state agencies with notice of its intent to sue for the violations described in this complaint.

8. Neither the EPA nor the State has commenced or is diligently prosecuting an action to redress the violations described in SHAA's notice letter and alleged in this complaint.

9. The violations identified in the notice letter are continuing at this time and are reasonably likely to continue in the future.

## IV. Parties

### Plaintiff SHAA

10. Signal Hill Area Alliance is a private, non-partisan, non-profit alliance of neighbors created to safeguard the quality of life of residents in the Signal Hill area and to promote mutual interests and address concerns related to the impact that development has upon the Signal Hill area.

11. Members of the Signal Hill Area Alliance all live within the Signal Hill neighborhood surrounding the Easy Mix facility. They live alongside the facility and the waterways sought to be protected by this suit. SHAA members have a unique interest in the aesthetic and environmental well-being of these waterways. Those interests have been and will continue to be affected by Easy Mix's ongoing violations of its stormwater permit.

12. The relief sought by this complaint will redress the harms to SHAA and its members caused by Easy Mix's unlawful discharges. Their injuries are unlikely to be redressed except by an order from this Court requiring Easy Mix to take immediate and substantial action to stop the unpermitted discharges and flow of pollutants into local waterways and to comply with other relief that this Court deems necessary.

13. If successful, this action also will result in civil penalties that will deter future violations that would threaten SHAA's and its members' use and enjoyment of the areas and waters adjacent to and downstream from the location where Easy Mix's violations have occurred.

14. SHAA and its members suffer actual, concrete injuries that are fairly traceable to Easy Mix's violations and are redressable by this Court. SHAA has no other adequate remedy at law.

**Defendant Easy Mix**

15. The defendant Easy Mix is a concrete contractor and supplier specializing in the supply, mixing, and pouring of concrete. Easy Mix conducts operations on a roughly ten-acre site south of highway 290 in the Signal Hill neighborhood of Austin's ETJ. The site is physically located at 10656 Signal Hill Road, within the Bear Creek watershed and the Edwards Aquifer Contributing Zone.

16. Easy Mix is a limited liability corporation registered in Texas. Easy Mix therefore is a

"person" under CWA section 502(5), 33 U.S.C. § 1362(5) and subject to citizen suit enforcement under the CWA. See 33 U.S.C. § 1365(a)(1).

17. Easy Mix's registered agent is Bill Heath, whose mailing address is 10656 Signal Hill Rd., Austin, Texas 78737-9619.

## V. Legal Background

### The Clean Water Act

18. Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve this goal, the Act prohibits "the discharge of any pollutant" into navigable waters, except as authorized by the CWA. 33 U.S.C. § 1311(a).

19. The CWA establishes the National Pollutant Discharge Elimination System ("NPDES") under which the Administrator of the EPA or an authorized State can issue NPDES permits, which allow the lawful discharge of pollutants subject to certain conditions. 33 U.S.C. § 1342. In Texas, the TCEQ has the authority to issue NPDES permits through the TPDES permitting program.

20. TPDES permits impose limitations on the discharge of pollutants and establish related monitoring and reporting requirements, in order to improve the cleanliness and safety of the Nation's waters. Each violation of a TPDES permit violates the CWA and is grounds for enforcement action. 33 U.S.C. §§ 1311(a), 1365(f).

21. The holder of a TPDES permit is subject to both federal and state enforcement action for failure to comply with the limitations imposed in the permit. 33 U.S.C. §§ 1319, 1342.

22. Clean Water Act § 402(p) (33 U.S.C. § 1342(p)) requires permits for stormwater discharges from either industrial or municipal activities. The EPA has implemented this requirement by the promulgation of 40 Code of Federal Regulations (CFR) § 122.26. A storm water discharge

associated with industrial activity is defined in these regulations, at 40 CFR § 122.26(b)(14), to include material handling sites, sites used for the application or disposal of process waste waters, sites used for the storage and maintenance of material handling equipment, and storage areas for raw materials. Application requirements for storm water discharges associated with industrial activity are established at 40 CFR § 122.26(c).

**Citizen Enforcement**

23. The CWA authorizes any citizen to file a civil action to enforce an effluent standard in an NPDES (or TPDES) permit, subject to certain limitations. 33 U.S.C. § 1365(a), (b). Subsection (a) of the citizen suit provision, entitled "Authorization; jurisdiction," instructs: "Except as provided in subsection (b) of this section..., any citizen may commence a civil action on his own behalf... against any person... who is alleged to be in violation of... an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a)(1).

24. The CWA defines the term "an effluent standard or limitation under this chapter" to mean, among other things, "a permit or condition thereof issued under, which is in effect under [section 402 of the CWA]." 33 U.S.C. § 1365(f).

25. CWA section 505, 33 U.S.C. § 1365, empowers citizens to seek remedies for unpermitted discharges violating Section 301 of the CWA, 33 U.S.C. § 1311, and for violations of NPDES permit conditions. This section also authorizes citizens to seek injunctive relief.

26. For violations occurring and assessed after January 15, 2019, each separate violation of the CWA subjects the violator to a penalty of up to $54,833 per day, per violation, pursuant to sections 309(d) and 505(a) of the CWA. 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. § 19.4 (2009) (Adjustment of Civil Monetary Penalties for Inflation). Section 505(d) of the CWA, 33

U.S.C. § 1365(d), allows prevailing or substantially prevailing parties to recover litigation costs, including attorney fees and expert witness fees.

27. The CWA subjects citizen suits to two limitations. 33 U.S.C. § 1365(b). First, sixty days before filing a citizen suit, the citizen must give notice of the alleged violation to the alleged violator, the EPA, and the State in which the alleged violation occurs. § 1365(b)(1)(A). Sixty days after giving notice, citizens may bring an action in federal district court to enforce any ongoing violations of the CWA. The Supreme Court has stated that "the purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60 (1987). Furthermore, "[t]he requirement that notice be given to the responsible officials highlights their primary role in enforcing the Act compared to the supplementary position of the citizen." Hamker v. Diamond Shamrock Chem. Co., 756 F.2d 392, 396 (5th Cir. 1985).

28. Second, the Act bars a citizen suit if the EPA or State "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(B). A preexisting consent decree will not bar a citizen suit where a defendants' legal violations continue even after entry of that consent decree. See La. Envtl. Action Network v. City of Baton Rouge, 677 F.3d 737, 750 (5th Cir. 2012).

29. Where, as here, the EPA or State fails to act within the sixty-day notice period, a citizen suit is appropriate. See Envtl. Conservation Org. v. City of Dallas, 529 F.3d 519, 526 (5th Cir. 2008) ("The citizen-suit provision is a critical component of the CWA's enforcement scheme,

as it 'permit[s] citizens to abate pollution when the government cannot or will not command compliance.'") (alteration in original).

## VI. Facts

30. SHAA fully incorporates **Exhibit 1**¸ including all attachments to **Exhibit 1**, into this complaint.

31. Easy Mix holds Multi-Sector General Permit number TXR05D064 for stormwater discharges at its Signal Hill facility. Stormwater drains off the property to the south, across private property and then on to a tributary of Bear Creek.

32. Control measures installed along the southern boundary of the Easy Mix site have not been effective in minimizing or preventing the discharge of pollutants. SHAA members have observed large fields of sediment deposited on neighboring property after rain events. Cement and fly ash, which is carried by stormwater runoff, collects in a stock pond on a neighbor's property. When that pond overflows, the water bypasses the pond and goes down to Little Bear Creek. Neighbors have observed dead frogs on their property and changes to the color of water drawn from wells on their property.

33. In TCEQ's permit file for the Signal Hill site, there are 13 environmental complaints related to sediment, milky-white liquid, and stormwater discharging off the site past control measures. These complaints are usually registered on days of heavy rain. TCEQ issued a Notice of Violation in 2018 for failure to maintain an SWP3 at the site. In 2017, TCEQ received a complaint that the site was allegedly not in compliance with the Edwards Aquifer rules.

34. From 2018 to 2019, Easy Mix's owner, Bill Heath, was subject to three criminal enforcement actions by the City of Austin for violating the City's environmental ordinances pertaining to illicit discharges of a pollutant into the water supply or a water distribution system.

35. On October 9, 2018, an Investigator for the City of Austin Development Services Department visited the Easy Mix facility in Signal Hill and observed "a large discharge of water overtopping two rows of silt fence and a stream of silty water flowing across the property onto the neighbor's property." Subsequently the City of Austin charged Bill Heath—Easy Mix's owner —for this illicit discharge in Austin Municipal Court. On November 23, 2018, Mr. Heath pled no contest to the charge of knowingly or recklessly discharging or allowing to be discharged or place or allow to be placed a pollutant into the water supply, water treatment system, or a water distribution system in violation of Austin City Ordinances. Mr. Heath entered into a deferral agreement with the court whereby he was ordered to, among other things, "maintain erosion controls sufficient to prevent further discharge of pollutants during the six-month period." That deferral was revoked on May 29, 2019 after a revocation hearing because "the plant continue[d] to pollute concrete/water due to rain." A true and correct copy of the Investigator's affidavit, the City's Complaints, and the Court's order deferring disposition with Mr. Heath's plea of *Nolo Contendere* as to the October 9, 2018 discharge are attached here as **Exhibit 2**.

36. City Investigators returned to the Easy Mix site at least two other times and observed illegal discharges of silty water going over the top and around erosion controls and flowing onto adjacent property. The City brought two additional criminal charges against Mr. Heath in Municipal Court for discharges occurring on January 2 and April 24 of 2019.[1] Mr. Heath paid the applicable fines for these discharges, constructively entering a plea of *Nolo Contendere*

---

[1] The Complaints allege that on each of these dates, Mr. Heath "did then and there knowingly or recklessly discharge or allow to be discharged or place or allow to be placed a pollutant into the water supply, a water treatment system, or a water distribution system, contrary to Sections 6-5-12 and 6-5-14 of the Code of the City of Austin, 2003, as amended."

under Texas Code of Criminal Procedure § 27.14(c) for those illicit discharges. A true and correct copy of the supporting affidavit, complaint, and full payment Judgment reflecting Mr. Heath's constructive entry of a plea of *Nolo Contendere* in regard to the January 2, 2019 discharge are attached here as **Exhibit 3**. A true and correct copy of the supporting affidavit, complaint, and full payment judgment reflecting Mr. Heath's constructive entry of a plea of *Nolo Contendere* as to the April 24, 2019 discharge are attached here as **Exhibit 4**.

37. The factual allegations underpinning the City's criminal charges—uncontested by the owner the facility—are consistent with what members of SHAA have observed for years after rain events.

38. Sampling of runoff from the site has occurred on several occasions, although not on nearly all of the occasions when runoff occurred. Bill Heath gathered a water quality sample of runoff on December 7, 2018. Analytical testing of that sample by Lower Colorado River Authority Environmental Laboratory Services reflected a pH of 9.06 standard units (S.U.). A true and correct copy of the analytical report for that sample (with certain relevant information highlighted) is attached here as **Exhibit 5**.

39. On April 24, 2019, the City of Austin gathered a water quality sample of stormwater leaving the site for purposes of analysis. Testing of that water quality sample demonstrated that it contained total suspended solids (TSS) in a concentration of 500 mg/L. A true and correct copy of the analytical report for that sample (with certain relevant information highlighted) is attached here as **Exhibit 6**.

40. Mr. Heath collected another sample of stormwater runoff from the site on June 24, 2019. Analytical testing of that sample by Aqua-Tech Laboratories, Inc. indicated a TSS concentration of 1810 mg/L, and a pH of 9.5 S.U. A true and correct copy of the analytical

report for that sample (with certain relevant information highlighted) is attached here as **Exhibit 7**.

41. Mr. Heath later gathered a sample of stormwater runoff discharged from the site on May 12, 2020. Analytical testing of that sample by Aqua-Tech Laboratories, Inc. showed a TSS concentration of 619 mg/L, and a pH of 9.1 S.U. A true and correct copy of the analytical report for that sample (with certain relevant information highlighted) is attached here as **Exhibit 8**.

## VII. First Claim for Relief (Violations of Conditions III(A)(4) and III(E)(2)(b))

42. SHAA incorporates each and every allegation set forth above.

43. Easy Mix's permit requires that the permittee implement all pollution prevention practices that are determined to be necessary, reasonable, and effective by the stormwater pollution prevention team, or that are required by a state or local authority, that are necessary to protect the water quality in receiving waters, or that are necessary to remain compliant with the permit. Condition III(A)(4). The permittee must additionally take all reasonable steps to minimize or prevent any discharge that has a reasonable likelihood of adversely affecting human health or the environment. Condition III(E)(2)(b).

44. Control measures installed along the southern boundary of the Easy Mix site have not been effective in minimizing or preventing the discharge of pollutants.

45. Easy Mix violated Conditions III(A)(4) of its permit by failing to implement all pollution prevention practices that are necessary to protect water quality in receiving waters on dates known or knowable to it and, at least, on the following dates:

46. October 9, 2018,

47. January 2, 2019, and

48. April 24, 2019.[2]

49. Easy Mix also violated Condition III(E)(2)(B) of its permit on those dates, by failing to take all reasonable steps to minimize or prevent any discharge or other permit violation that has a reasonable likelihood of adversely affecting human health or the environment.

50. Each violation is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402, 33 U.S.C. § 1342, of the CWA.

51. Neither the EPA nor the State of Texas is diligently prosecuting these permit violations.

52. Easy Mix's violations constitute ongoing violations of the CWA. Based on the pattern of Easy Mix's past permit violations, it is reasonably likely that Easy Mix's violations will continue with the same frequency. Easy Mix's violations are continuing at the time of the filing of this complaint and will continue to occur on significant rainfall events in the future.

53. Easy Mix's continuing commission of the acts and omissions alleged in this complaint irreparably harms the waters of the United States in the Signal Hill area, as well as SHAA and its members, for which harm they have no adequate remedy at law.

## VIII. Second Claim for Relief
## (Violations of Condition V(E)(5)(a))

54. SHAA incorporates each and every allegation set forth above.

55. Easy Mix's Signal Hill facility is assigned Standard Industrial Classification (SIC) code 3272 (concrete products). Thus, it falls within the requirements applicable to Sector E (Glass, Clay, Cement, Concrete, and Gypsum Products) of the General Permit. Facilities falling within Sector E are subject to numeric effluent limitations for total suspended solids (TSS) of 50 mg/L

---

[2] Affidavits sworn by City of Austin Inspectors detail the extent and nature of the polluted runoff that occurred on these dates.

and pH of 6.0-9.0 S.U.[3] For Sector E, an exceedance of these limits constitutes a violation of the permit.

56. Easy Mix violated the numeric effluent limitation for Total Suspended Solids on dates known or knowable to it and, at least, on the following dates:

57. April 24, 2019,

58. June 24, 2019, and

59. May 12, 2020.

60. In addition, Easy Mix violated the numeric effluent limitation for pH on dates known or knowable to it and, at least, on the following dates:

61. December 7, 2018,

62. June 24, 2019, and

63. May 12, 2020.

64. Neither the EPA nor the State of Texas is diligently prosecuting these violations.

65. Easy Mix's violations are reasonably likely to continue in the future in the absence of the requested relief.

66. Easy Mix's continuing commission of the acts and omissions alleged in this complaint irreparably harms the waters of the United States in the Signal Hill area, as well as SHAA and its members, for which harm they have no adequate remedy at law.

## IX. Prayer for Relief

67. SHAA respectfully asks this Court to:

[3] TXR050000, Part IV(E)(5).

68. Issue a declaratory judgment stating that Easy Mix has violated and is continuing to violate the Clean Water Act and the conditions of its TPDES permits with its recurring discharges of polluted stormwater into waters of the United States;

69. Grant appropriate injunctive relief to ensure that Easy Mix prevents the recurring discharge of polluted stormwater into waters of the United States and addresses the local environmental effects of the recurring discharges;

70. Retain jurisdiction over this matter until such time as Easy Mix has come into compliance with the prohibitions, terms, and conditions of the CWA and the injunctive relief ordered by this Court;

71. Assess civil penalties against Easy Mix of up to $56,460 per violation, per day for violations that occurred after November 2, 2015, as provided by 33 U.S.C. §§ 1319(d) and 1365(a), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. pt. 19;

72. Award SHAA its costs, including reasonable attorney fees, as authorized under the CWA. 33 U.S.C. § 1365(d); and

73. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted on April 21, 2021.

By:
/s/ Eric Allmon
Eric Allmon
Texas Bar No. 24031819
eallmon@txenvirolaw.com

**PERALES, ALLMON & ICE, P.C.**
1206 San Antonio St.
Austin, Texas 78701
Tel: (512) 469-6000
Fax: (512) 482-9346

*Attorney for Signal Hill Area Alliance*

**EXHIBITS**

Exhibit 1 – Plaintiff SHAA's Notice of Intent to Sue Letter (January 22, 2021).
Exhibit 2 – Discharge Attachment (October 9, 2018).
Exhibit 3 – Discharge Attachment (January 2, 2019).
Exhibit 4 – Discharge Attachment (April 24, 2019).
Exhibit 5 – Sampling Report (December 2018).
Exhibit 6 – Sampling Report (April 2019).
Exhibit 7 – Sampling Report (June 2019).
Exhibit 8 – Sampling Report (May 2020).